# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| ANNA MARIE BAPTISTA, | ) | Case No.: 1:18-cv-00844 JLT |
|---|---|---|
| Plaintiff, | ) ) | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND  ORDER |
| v. | ) ) | DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL |
| COMMISSIONER OF SOCIAL SECURITY, | ) | SECURITY, AND AGAINST PLAINTIFF ANNA MARIE BAPTISTA |
| Defendant. | ) ) | |
| | ) | |

Anna Marie Baptista asserts she is entitled to supplemental security income and disability insurance benefits under Titles II and XVI of the Social Security Act.  Plaintiff argues the ALJ erred in evaluating the record and that the matter should be remanded for further proceedings due to new evidence submitted to the Appeals Council.  For the reasons set forth below, the Court finds Plaintiff failed to demonstrate good cause for the submission of the additional evidence to the Appeals Council, and the ALJ's decision denying benefits is **AFFIRMED**.

## BACKGROUND

On June 12, 2015, Plaintiff filed her applications for benefits, in which she alleged disability beginning December 28, 2014.  (*See* Doc. 7-6 at 12-21)  The Social Security Administration denied her applications at the initial level and upon reconsideration.  (Doc. 7-5 at 2, 12-16)  Plaintiff requested a hearing and testified before an ALJ on July 28, 2017.  (Doc. 7-3 at 16, 49)  During the hearing, Jeffrey Duarte, Plaintiff's counsel indicated that additional medical records may be submitted, and the ALJ

indicated she would hold the record open for ten days.  (Doc. 7-3 at 81) Plaintiff submitted additional documents, which the ALJ incorporated into the record.  (*See id.* at 16, 31) The ALJ determined Plaintiff was not disabled as defined by the Social Security Act and issued an order denying benefits on December 26, 2017.  (Doc. 7-3 at 16-27)

Plaintiff filed a request for review of the decision with the Appeals Council, asserting the ALJ erred in evaluating her credibility and reviewing the medical record.  (Doc. 7-5 at 82; Doc. 7-7 at 52-65)  At that time, Mr. Duarte indicated there was "no additional evidence or legal argument to submit." (Doc. 7-5 at 82)  On March 5, 2018, the Appeals Council issued a notice informing Mr. Duarte:

> You may send us a statement about the facts and the law in this case or additional evidence. We consider additional evidence that you show is new, material, and relates to the period on or before the date of the hearing decision. You must also show that there is a reasonable probability that the additional evidence would change the outcome of the decision. You must show good cause for why you missed informing us about or submitting it earlier.

(Doc. 7-3 at 8)  The following day, Plaintiff submitted a report by Dr. Joel Renbaum, from an orthopedic evaluation performed on September 19, 2017.  (*Id.* at 32-45)

The Appeals Council reviewed the new evidence and determined it did "not show a reasonable probability that it would change the outcome of the decision."  (Doc. 7-3 at 3)  Therefore, the Appeals Council indicated it "did not consider and exhibit this evidence."  (*Id.*) The Appeals Council denied Plaintiff's request for review on April 26, 2018 (*id.* at 2-5), at which time the ALJ's determination became the final decision of the Commissioner of Social Security.

**STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f).  The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*  The ALJ must consider testimonial and objective medical evidence.  20 C.F.R. §§ 404.1527, 416.927.

**A.      Medical Evidence and Opinions before the ALJ**

In June 2014, Plaintiff visited Turlock Medical Office, where she was treated by Dr. Mitchell

Cohen for low back pain.  (Doc. 7-8 at 25)  Dr. Cohen noted Plaintiff's medications included Hydrocodone-acetaminophen "up to twice daily as needed for pain," Loratadine, and Baclofen "as needed for spasms."  (*Id.*)

Plaintiff returned to Turlock Medical office in September and December 2014, receiving treatment for a sinus infection and headaches.  (Doc. 7-8 at 17, 20)  She continued to take the medication identified by Dr. Cohen, as well as azithromycin for the sinus infection.  (*Id.* at 18-19, 22)

In February 2015, Plaintiff again reported having low back pain, after which she underwent an MRI of her lumbar spine on February 20.  (Doc. 7-8 at 10, 31-32)  Dr. Monica Martinez found "a new disc protrusion/extrusion at L2-L3."  (*Id.* at 32)  She determined Plaintiff had "severe facet arthropathy" at L4-L5, L5-6, and L6-S1; spondylolisthesis at L5-L6 and L6-S2; and disc protrusions at L3-L4, L4-L5, and L5-L6.  (*Id.*)  Dr. Martinez compared the results of the MRI to one taken in 2010 and concluded each of these conditions was "stable."  (*Id.*)

Due to reports of neck pain, Plaintiff had radiographs taken on her cervical spine on May 5, 2015.  (Doc. 7-8 at 30; Doc. 7-9 at 14)  Dr. Ajit Nijjar found "multilevel degenerative disc disease and facet joint arthritic changes [were] present in the cervical spine" with "minimal grade I anterolisthesis at [the] C4-5 and C5-6 levels."  (*Id.*)  In addition, Dr. Nijjar determined there was "mild encroachment of the left neural foramen at [the] C3-4 level."  (*Id.*)

In June 2015, Plaintiff underwent an MRI of her cervical spine.  (Doc. 7-8 at 72-73)  Dr. Jerry Grigoropoulos determined Plaintiff had "[d]egenerative 1-2 mm anterolisthesis of C4 on C6 and C5 on C6" and advanced facet arthrosis.  (*Id.* at 73)  Dr. Grigoropoulos opined Plaintiff had "moderate left paracentral disc spur complex and uncinate spurring C3-C4 with superimposed facet arthropathy and significant left-sided foraminal encroachment."  (*Id.*)  He found "[n]o cord compression or cord edema."  (*Id.*)

Dr. F. Karl Gregorius performed a neurological consultative examination on June 10, 2015.  (Doc. 7-9 at 2)  Plaintiff told Dr. Gregorius she had pain in her lumbar spine that radiated down to both hamstrings.  (*Id.*)  She said her pain was "4 to 6/10" on average in her lumbar spine and 2/10 in her legs.  (*Id.*)  However, her back pain could increase to 9/10 at night when she extended her back.  (*Id.*)  Plaintiff reported she could walk about 1 mile; stand for an hour; and "sit through a movie, if she

4

changes position." (*Id.*) Dr. Gregorius noted Plaintiff was "quite active," noting she also "goes to Disneyland" and "does gardening." (*Id.*) Dr. Gregorius observed:

> The examination shows that this patient is healthy appearing. The patient can flex the lumbar spine to 80° to 90° and extend to +10°, she reverses her lumbar curve. She has some moderate pain with extension from the flexed position. She has negative straight leg raising bilaterally at 90°. She has 5/5 strength in her legs. The reflexes are 2+ at the patellae and absent at the ankle areas.

(*Id.*) Dr. Gregorius reviewed the MRI of the lumbar spine and noted it showed "degenerative disc disease at virtually every level of her lumbar spine," without evidence of nerve root impingement. (*Id.*) According to Dr. Gregorius, Plaintiff was "getting along quite well with her pain syndrome on minimal amounts of medication." (*Id.* at 3) Dr. Gregorius informed Plaintiff "the only thing [he] could recommend was possibly an epidural steroid injection to try if her pain worsened or possibly water therapy [could] help her if she could learn to do the water exercises during a physical therapy class and then do the water therapy on her own." (*Id.*)

In July 2015, Plaintiff returned to Dr. Cohen with complaints of low back and neck pain. (Doc. 7-8 at 62) Dr. Cohen noted Plaintiff also reported right shoulder pain, which was "associated with numbness, tingling and impaired [range of motion]." (*Id.*) She stated the pain was "better" with the prescribed nonsteroidal anti-inflammatory drugs, and exercise also helped with her shoulder pain. (*Id.*) Dr. Cohen found Plaintiff had a decreased range of motion in her neck, and she was able to abduct her shoulder "to greater than 90 degrees with some pain." (*Id.* at 64) Dr. Cohen noted the MRI findings for Plaintiff's neck were "not completely consistent with symptomology," and Plaintiff denied a referral for physical therapy, stating she would "do it at home." (*Id.*) He also indicated Plaintiff should have an x-ray due to her reported shoulder pain. (*Id.*)

The following month, Plaintiff reported that "her shoulder [had] gotten better," and she did not have an x-ray taken. (Doc. 7-8 at 57) Dr. Cohen opined that, though Plaintiff reported her neck pain was "a bit worse," her condition was stable and unchanged. (*Id.* at 57, 60)

Dr. J. Linder reviewed available records and completed a physical residual functional capacity assessment on August 25, 2015. (Doc. 7-4 at 6-7, 14-15) Dr. Linder opined Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, sit about six hours in an eight-hour day, and stand and/or walk about six hours in an eight-hour day. (*Id.* at 6, 14) Dr. Linder concluded Plaintiff

could frequently climb ramps and stairs, stoop, kneel, crouch, and crawl; and occasionally climb ladders, ropes, and scaffolds. (*Id.* at 7, 15) Dr. Linder opined Plaintiff did not have manipulative or environmental limitations. (*Id.*)

In October 2015, Plaintiff reported that she was "hurting everywhere," and her hands were "locking up." (Doc. 7-8 at 53) Dr. Cohen noted Plaintiff continued to take Loratradine, Hydrocodone-acetaminophen "twice a day as needed for pain," Baclofen "as needed for spasms," Acyclovir, and Xopenex "as needed for wheezing." (*Id.* at 54)

Dr. Cohen completed a residual functional capacity questionnaire on October 20, 2015. (Doc. 7-11 at 2-5) He noted Plaintiff had been diagnosed with right shoulder pain, neck pain, and low back pain. (*Id.* at 2) Dr. Cohen opined Plaintiff was stable with her pain medication. (*Id.* at 3) He indicated he was "unable to assess" Plaintiff's ability to sit, stand, walk, or the amount of weight she could lift and carry in a competitive work situation. (*Id.* at 3-4) He believed Plaintiff should elevate her legs, but indicated it was "unknown" how high she should do so or the percentage of the day elevation was required. (*Id.* at 4) Dr. Cohen indicated Plaintiff could rarely look down or look up; occasionally turn her head or hold it in a stable position; and rarely twist, stoop, crouch, crawl, and climb. (*Id.* at 4-5) According to Dr. Cohen, Plaintiff did not have any limitations with reaching, handling, or fingering. (*Id.* at 5)

Dr. H. Samplay reviewed the medical record related to Plaintiff's request for reconsideration on January 11, 2016. (Doc. 7-4 at 26) Dr. Samplay noted Plaintiff had "slight restriction of [range of motion] but no evidence of radiculopathy. (*Id.*) Dr. Samplay also found there were "no additional physical exam findings" in the record "to support any worsening of impairment." (*Id.*) Therefore, Dr. Samplay affirmed the medium residual functional capacity assessment with postural limitations identified by Dr. Linder at the initial level. (*Id.*; *see also id.* at 25-26)

Later in January 2016, Plaintiff told Dr. Cohen her "neuropathy [was] acting up." (Doc. 7-8 at 44) Plaintiff also reported that she was exercising regularly, and Dr. Cohen observed she did not appear in "acute distress." (*Id.* at 45-46) Dr. Cohen opined Plaintiff's neck impairment was "unchanged," but added a prescription for gabapentin "at night for the pain." (*Id.* at 47)

At a follow-up appointment on March 1, 2016, Plaintiff told Dr. Cohen "the gabapentin [was]

helping her," and "[h]er pain control was much better with the addition of gabapentin." (Doc. 7-10 at 41) Dr. Cohen opined Plaintiff's lumbar back pain was improved and stable. (*Id.* at 43)

In April 2016, Plaintiff visited Turlock Medical Office for treatment of right hip pain, reporting "she bent over to pick up something about a week [before] and she felt a pop in ... her low back/ right hip." (Doc. 7-10 at 37) Dr. Hardeep Saini observed that Plaintiff walked with a normal gait, sat comfortably, and transferred from a chair to the table without discomfort. (*Id.* at 39) Dr. Saini found Plaintiff had a full range of motion in her lumbar spine, and her hip range of motion was "good with [a] slight decrease in abduction due to groin pain." (*Id.*) In addition, Dr. Saini determined Plaintiff's motor strength was 5/5. (*Id.*)

In June 2016, Plaintiff told Dr. Cohen that she was exercising regularly, and Dr. Cohen opined the conditions were stable. (Doc. 7-10 at 34, 35) Dr. Cohen also noted he "[a]dvised [Plaintiff] of the THC policy and that she needs to stop." (*Id.* at 35)

Plaintiff reported she still had neuropathy down her legs in August 2016, despite taking gabapentin. (Doc. 7-10 at 26) Dr. Cohen directed Plaintiff "to increase the gabapentin to 2 at night." (*Id.* at 29)

In October 2016, Plaintiff told Dr. Cohen that "[h]er back and legs still hurt," though "[h]er legs were better at night... with the increase on the gabapentin." (Doc. 7-10 at 20) Dr. Cohen indicated Plaintiff would continue taking gabapentin for leg pain and refilled the prescriptions for Hydrocodone-acetaminophen and Baclofen to treat Plaintiff's back pain. (*Id.* at 22-23)

In January 2017, Plaintiff reported difficulty sleeping and eating after "[h]er sister was diagnosed with lymphoma and a friend [had] melanoma." (Doc. 7-10 at 10) Plaintiff told Dr. Cohen that "[h]er back pain [was] still present." (*Id.*) Dr. Cohen also noted Plaintiff reported she was not using drugs or alcohol and exercised regularly. (*Id.* at 11) He prescribed Trazadone for Plaintiff to take "once a day at bedtime for insomnia" and directed Plaintiff to return in two months for a follow-up appointment. (*Id.* at 13, 14)

Plaintiff reported that her "neck and back... flared up again and she [was] experiencing paresthesias going into her left arm and both legs" at the follow-up in March 2017. (Doc. 7-10 at 5) She also told Dr. Cohen that gabapentin helped. (*Id.*) Dr. Cohen determined Plaintiff had a "minimal"

positive straight leg raise test, bilaterally. (*Id.* at 7) Dr. Cohen ordered new imaging of Plaintiff's spine, noting imaging was last done in 2015. (*Id.* at 8)

In April 2017, Plaintiff had the MRIs of her lumbar spine and cervical spine. (Doc. 7-9 at 15-18) Dr. Paul Ramirez determined Plaintiff had "Grade I anterolisthesis;" foraminal stenosis, which was moderate at the L3-L4 and L4-5 levels and severe at L5-S1; and "multilevel degenerative disc disease throughout the lumbar spine." (*Id.* at 16) Dr. Ramirez also confirmed "[m]ultilevel mild degenerative disc diseases throughout the cervical spine" and "[a]nterolisthesis of C4 on C5, C5 on C6 and C6 on C7." (*Id.* at 18)

Dr. Cohen saw Plaintiff in May 2017 and reviewed the results of the MRIs with Plaintiff. (Doc. 7-11 at 6, 8) Plaintiff reported "her neck and back [were] hurting the same," and she was "still [using] pain meds when needed." (*Id.* at 6) She also told Dr. Cohen that she was getting exercise regularly. (*Id.*) Dr. Cohen noted Plaintiff was "[n]ot interested in epidural injections" and "[n]ot interested in surgical referral at [that] time." (*Id.*)

In June 2017, Plaintiff told Dr. Cohen that she felt the "same since [the] last visit." (Doc. 7-11 at 10) She believed she could not "sit longer than 30 minutes" and needed to frequently change positions. (*Id.*) Plaintiff also reported renting "a scooter for travel and going places." (*Id.*) Dr. Cohen opined Plaintiff did not appear in acute distress, and she had a "normal attention span and concentration." (*Id.* at 12) He questioned Plaintiff regarding symptoms of depression, including her interest in doing things, ability to sleep, tiredness, and concentration; and found she had "0" symptoms. (*Id.* at 14) Dr. Cohen directed Plaintiff to continue the same medicine regime. (*Id.* at 12)

Dr. Frank Fine performed a consultative examination and prepared a report for Plaintiff's counsel on July 12, 2017. (Doc. 7-3 at 24; Doc. 7-10 at 70-77) Plaintiff told Dr. Fine that she had pain in her neck, lower back, and hands. (Doc. 7-10 at 74) She described her current pain as "an 8/10, at best 4/10 with medications, 10/10 without them." (*Id.*) Dr. Fine opined Plaintiff's grip strength was "quite diminished in both hands," with "positive Finkelstein's maneuvers causing pain in her wrists" and "mildly positive" Phalen's and Tinel's signs. (*Id.* at 76) However, her motor strength was 5/5 in the muscle groups tested in her upper extremities. (*Id.*) Dr. Fine opined Plaintiff had "4/5 weakness in right thigh, flexion, knee extension, and great toe extension," and a "limited range" of motion in the

lower back.  (*Id.*)  He observed that Plaintiff walked with a limp and was "somewhat antalgic, leaning to the right."  (*Id.*)  Dr. Fine completed a residual functional capacity questionnaire in which he indicated Plaintiff could walk for ½ a block without severe pain; sit, stand, and walk for less than two hours in an eight-hour day; and would need to be permitted to shift positions at will, walking around every 10 to 15 minutes.  (*Id.* at 71-72)  He believed Plaintiff could rarely lift and carry less than ten pounds, and use her hands and arms for grasping, fine manipulation, and reaching for 33% of the workday for each activity.  (*Id.* at 72-73)  Dr. Fine also indicated Plaintiff could occasionally turn her head or hold it in a static position; and rarely twist, stoop, crouch, and climb.  (*Id.*)  Dr. Fine opined Plaintiff suffered symptoms of depression and anxiety that contributed to the severity of her physical symptoms and made her pain "3-4 times worse than it really is."  (*Id.* at 71, 77)  He concluded Plaintiff was likely to miss work more than four days per month due to her impairments and treatment.  (*Id.* at 73)

**B.     Administrative Hearing Testimony**

On July 28, 2017, Plaintiff testified before an ALJ with the assistance of counsel.  (Doc. 7-3 at 49)  She reported that she was married, and her 12-year-old grandson, over whom she had custody, lived with them.  (*Id.* at 52-53, 55)  Plaintiff said she had a driver's license and drove "a couple times a week at least," to visit her mother or go to the store.  (*Id.* at 53)

Plaintiff stated that on a typical summer day, she worked with her grandson on handwriting and schoolwork to help him prepare for seventh grade. (Doc. 7-3 at 59)  Plaintiff said she, her husband, and her grandson did the laundry, though they hired a housekeeper to come in and clean.  (*Id.*)  She reported that she helped with cooking and her grandson was learning.  (*Id.*)

She believed she was unable to work due to pain from "sitting a long time or standing too long," and her hands were "very crooked." (Doc. 7-3 at 62)  Plaintiff reported she saw a surgeon for her back pain who said she should have steroid shots, but she did them twice and "[t]hey did not work."  (*Id.*)  She said she would do stretching exercises for her back, "but it only help[ed] so long."  (*Id.*)  Plaintiff said she also had neuropathy that affected her legs.  (*Id.* at 64)  The ALJ questioned whether Plaintiff's nerves were tested, and counsel confirmed a nerve conduction study was not performed.  (*Id.*)

Plaintiff stated her physician informed her that if she fixed one problem she was "still at the age

where he felt that it's going to get worse." (Doc. 7-3 at 70)  In addition, Plaintiff said Dr. Cohen informed her the MRI results from 2017 documented a worsening in her condition from the results in 2015.  (*Id.* at 70, 73)

Plaintiff estimated that she could walk "20, 30 minutes or so" before she wanted to take a break and three hours total in an eight-hour period.  (Doc. 7-3 at 65-66)  She stated she could "stand for probably 30 minutes" at one time, but she needed to pivot because it felt like "a knife in [her] back" if she remained still.  (*Id.* at 66)  She also believed she could sit for one hour at a time and "a few times" total in an eight-hour day.  (*Id.*)  Plaintiff said she was "very strong [in] her arms," but was limited to lifting "probably 15 pounds" because her arms and hands would "lock."  (*Id.* at 67)  Plaintiff testified that if she had to bend or stoop, she "would kind of feel like [she] was going to drop."  (*Id.* at 68)

At the end of the hearing, Jeffrey Duarte, Plaintiff's counsel, indicated there were additional treatment records from Dr. Cohen's office that were not included in the record, but they could be obtained "within the next ten days."  (Doc. 7-3 at 80-81)  The ALJ indicated that she would hold the record open for ten days, but there would be no extensions.  (*Id.* at 81)

## C.    The ALJ's Findings

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity after the alleged onset date of December 28, 2014.  (Doc. 7-3 at 19)  Second, the ALJ found Plaintiff had "the following severe impairments: degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine; bilateral osteoarthritis in both hands; and allergies."  (*Id.*)  At step three, the ALJ found Plaintiff's reported physical and mental impairments did not meet or medically equal a Listing.  (*Id.* at 19-20)  Next, the ALJ determined:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following function-by-function limitations: lift/carry 20 pounds occasionally, 10 pounds frequently; sit 6 hours in an 8 hour workday; stand/walk 6 hours in an 8 hour workday; precluded from climbing ladders, ropes, and scaffolds; frequently climb ramps and stairs; frequently stoop, kneel, crouch, and crawl; perform frequent gross manipulation; and should avoid concentrated exposure to fumes, odors, dusts, smoke, gas, poor ventilation, and so forth.

(*Id.* at 20)  With this residual functional capacity, the ALJ determined at step four that Plaintiff was "capable of performing [her] past relevant work as a dispatcher."  (*Id.* at 25)  In the alternative, at step five, the ALJ determined there were "other jobs existing in the national economy that she is also able to

perform," such as general clerk, file clerk, and home health aide.  (*Id.* at 25-26)  Therefore, the ALJ concluded Plaintiff was "not … under a disability, as defined by the Social Security Act, from December 28, 2014, through the date of [the] decision."  (*Id.* at 26)

**D.      Evidence Presented to the Appeals Council**

In connection with Plaintiff's request for review of the ALJ's decision by the Appeals Council, she submitted an evaluation by Dr. Joel Renbaum.  (Doc. 7-3 at 32-45)  Upon the referral of Mr. Duarte, Dr. Renbaum reviewed Plaintiff's medical records and performed an "orthopedic permanent disability evaluation on September 19, 2017."  (*Id.* at 32)  Dr. Renbaum opined:

> I do not feel that she would be capable of performing in her usual and customary work activities. Her restrictions would include no repetitive bending, no lifting over 20 pounds and no prolonged flexion/extension of the neck. If her employer is unable to permanently accommodate these restrictions, she would be eligible for Supplemental Job Displacement Benefits.

(*Id.* at 44)  Plaintiff's counsel received this evaluation on October 19, 2017.  (*Id.* at 32)

**DISCUSSION AND ANALYSIS**

Plaintiff argues that the Appeals Council erred by failing to address the report of Dr. Renbaum when considering her request for review of the ALJ's decision.  (Doc. 13 at 7-9)  In addition, Plaintiff contends the ALJ erred in evaluating the credibility of her subjective complaints and evaluating the medical record to formulate her residual functional capacity.  (*Id.* at 9-25)  The Commissioner argues that neither the ALJ nor Appeals Council erred, and the "final decision is supported by substantial evidence."  (Doc. 14 at 13; *see also id.* at 3-12)

**A.      Appeal's Council Review**

The Regulations govern when Appeals Council is obligated to review additional evidence submitted after the ALJ issues a decision. *See* 20 C.F.R. §§ 404.970, 416.1470 (effective January 17, 2017).  The Regulations indicate that the Appeals Council "will review a case if . . . [s]ubject to paragraph (b) of this section, the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).  In addition, Paragraph (b) provides:

> The Appeals Council will only consider additional evidence under paragraph (a)(5) of this section if you show good cause for not informing us about or submitting the

11

evidence as described in § 404.935 [or §416.1435] because:

(1) Our action misled you;

(2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or

(3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier. Examples include, but are not limited to:

(i) You were seriously ill, and your illness prevented you from contacting us in person, in writing, or through a friend, relative, or other person;

(ii) There was a death or serious illness in your immediate family;

(iii) Important records were destroyed or damaged by fire or other accidental cause;

(iv) You actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing; or

(v) You received a hearing level decision on the record and the Appeals Council reviewed your decision.

20 C.F.R. §§ 404.970(b), 416.1470(b) (effective Jan. 17, 2017). Thus, the Regulations now inform claimants that the Appeals Council "will only consider additional evidence" where good cause is demonstrated for the failure to submit the evidence and provide examples of what constitutes good cause.[1] In accordance with these Regulations, the Appeals Council notified Plaintiff's counsel that if additional evidence was submitted, he "must show good cause." (Doc. 7-3 at 8)

1.    Evidence in the record

The Ninth Circuit has distinguished between evidence the Appeals Council "considered" and evidence the Appeals Council merely "looked at" to determine whether the additional evidence was incorporated into the record. The Court explained that evidence the Appeals Council *considered* becomes part of the administrative record as "evidence upon which the findings and decision complained of are based. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir.

---

[1] Prior to the amendment of the Regulations, claimants were not required to demonstrate good cause for the submission of additional evidence to the Appeals Council. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012). However, the amended Regulations were made effective on January 16, 2017. 81 Fed. Reg. 90,987 (Dec. 16, 2016). Because the ALJ's decision was issued in December 2017 and the Appeals Council's decision was issued on April 26, 2018, the amended Regulations clearly apply.

12

2012).  In contrast, where "the Appeals Council only *looked at* the evidence... the new evidence did not become part of the record." *Amor v. Berryhill*, 743 F. App'x 145, 146 (9th Cir. 2018) (emphasis added); *see also De Orozco v. Comm'r of Soc. Sec*, 2019 WL 2641490 at*11 (E.D. Cal. June 26, 2019) (observing that the Ninth Circuit has distinguished between instances where the Appeals Council formally considered evidence and made it part of the administrative record with instances where the Appeals Council only looked at the evidence). Importantly, where the Appeals Council only looks at the evidence and it does not become part of the administrative record, the Court "may not consider it." *Amor*, 743 F. App'x at 146; *see also Lowry v. Barnhart*, 329 F.3d 1019, 1024 (9th Cir. 2003).

The Appeals Council indicated that it reviewed the new evidence from Dr. Renbaum and determined it did "not show a reasonable probability that it would change the outcome of the decision."  (Doc. 7-3 at 3)  Therefore, the Appeals Council indicated it "did not consider and exhibit this evidence."  (*Id.*)  Because the Appeals Council did not *consider* the evidence but merely looked at it, the report from Dr. Renbaum was not incorporated to the administrative record subject to the Court's review.  *See Amor*, 743 F. App'x at 146; *Lowry*, 329 F.3d at 1024.

### 2.     Good cause requirement

When the Appeals Council fails to "consider" additional evidence that satisfies the requirements of Section 404.970(b), a remand for further administrative proceedings is appropriate. *Taylor v. Comm'r of Soc. Sec. Admin*., 659 F.3d 1228, 1233 (9th Cir. 2011). The claimant has the "burden to satisfy the 'good cause' requirement before the Appeals Council is required to review the case." *Schenone v. Saul*, 2019 WL 2994492 at *7 (E.D. Cal. July 9, 2019); *see also Norbert S. v. Berryhill*, 2019 WL 2437457 at *10 (D. Or. June 11, 2019) ("the regulation shifts the burden to the claimant to satisfy the 'good cause' requirements of section 404.970(b) . . . .").

Plaintiff contends, "[T]here was good cause for the submission of Dr. Renbaum's report post-trial, and post-appeal to the Appeals Council, as said report from Dr. Renbaum was based on an evaluation he performed of Plaintiff on September 17, 2017," which occurred after the hearing before the ALJ on July 28, 2017.  (Doc. 13 at 7)  Importantly, however, Plaintiff fails to explain why she did not seek have the consultative evaluation with Dr. Renbaum prior to the hearing with the ALJ, or why she was unable to complete the assessment when the record was held open after the hearing.  Likewise,

as the Commissioner observes, "Plaintiff has not offered an explanation as to why she did not submit the September 2017 report to the ALJ, who did not issue a final decision until December 2017." (Doc. 14 at 4)

Previously, this Court found a claimant lacked good cause where she submitted to consultative examinations after the hearing with an ALJ and submitted reports from these physicians to the Appeals Council. *See Schenone*, 2019 WL 2994492 at *7 ("plaintiff has not shown why she and her council did not seek the assessments prior to the hearing") (citing *Jessie C. B. v. Berryhill*, 2019 WL 1293604 at *5 (D. Mont. Mar. 21, 2019) [finding no good cause where the plaintiff submitted RFC assessments completed after the ALJ's decision but did not show why the assessments were not sought before the hearing]). Similarly, here, Plaintiff's delay in seeking an orthopedic evaluation upon the referral of counsel until after the hearing—and after the ALJ closed the record—does not support a finding of good cause.

Further, Plaintiff fails to address any of the factors to demonstrate good cause that are set forth in the Regulations, such as a misleading action by the Appeals Council, limitations that prevented her from informing the Appeals Council about the evidence; or "[s]ome other unusual, unexpected, or unavoidable circumstance beyond your control." *See* 20 C.F.R. §§ 404.970(b), 416.1470(b). Thus, the Court finds Plaintiff failed to demonstrate good cause for the Appeals Council to consider the evidence from Dr. Renbaum and declines to remand the action for further proceedings on these grounds. *See Schenone*, 2019 WL 2994492 at *7-8; *see also Smith v. Berryhill,* 2019 WL 1549036, at *21 (D.S.C. Mar. 6, 2019) (holding a plaintiff may not use the fact that an assessment was dated after the ALJ's decision "to automatically qualify as a good cause exception because it undermines the purpose of the rule" and declining remand), *adopted* 2019 WL 1533171 (D.S.C. Apr. 9, 2019).

**B.      The ALJ's Credibility Analysis**

In evaluating a claimant's credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if there is no evidence of malingering, the ALJ must make specific findings as to the claimant's credibility by setting forth clear and

convincing reasons for rejecting his subjective complaints. *Id.* at 1036; *see also Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).

If there is objective medical evidence of an underlying impairment, an ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because it is unsupported by objective medical evidence. *See Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991) The Ninth Circuit explained:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

*Smolen v. Chater* 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the credibility test established in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986)).

An ALJ may consider additional factors to assess a claimant's credibility including, for example: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct, (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment, and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (an ALJ may consider a claimant's reputation for truthfulness, inconsistencies between a claimant's testimony and conduct, and a claimant's daily activities when weighing the claimant's credibility).

The ALJ determined first Plaintiff's "medically-determinable impairments could reasonably be expected to produce the ... alleged symptoms." (Doc. 7-3 at 21) However, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*) The ALJ found her symptoms were not consistent with objective clinical findings, inconsistent statements, Plaintiff's level of activity, the treatment received, and the effectiveness of the treatment. (*Id.* at 22-24) Plaintiff asserts the ALJ failed to make a proper credibility determination and "her decision is not supported by specific

cogent reasons, as required by the court." (Doc. 13 at 10)

1. Objective medical evidence

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The Ninth Circuit explained, "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis"). Because the ALJ did not base the decision solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff, the objective medical evidence was a relevant factor in determining Plaintiff's credibility.

However, if an ALJ cites the medical evidence as part of a credibility determination, it is not sufficient for the ALJ to simply state that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination"). Rather, an ALJ must "specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ must identify "what evidence suggests the complaints are not credible").

The ALJ determined, "The alleged severity and limiting effects of the claimant's pain symptoms are not substantiated by medical evidence in the record." (Doc. 7-3 at 21) For example, the ALJ found "physical examination demonstrated full, 5/5 strength, intact sensation, and grossly intact deep tendon reflexes," which "demonstrate[d] well-preserved function throughout the cervical spine and upper extremities." (*Id.* at 22, citing Exh. 10F, pg. 3 [Doc. 7-10 at 76]) In addition, the ALJ observed that while the MRIs in February 2015 established "underlying impairment[s] that would produce pain"—including disc protrusions, "stable severe facet arthropathy," and spondylolysis—"on physical examination in June 2015 the claimant reported only moderate pain with flexion, but

16

demonstrated negative straight leg raising bilaterally, retained full 5/5 motor strength in the legs, and full reflexes." (*Id.*, citing Exh. 4F, p. 1 [Doc. 7-9 at 2]) The ALJ also noted that a "[l]ater examination in April 2016 confirmed negative straight leg raising, full range of motion in the lumbar spine, and full (5/5) motor strength. (*Id.*, citing Exh. 8F, p. 38 [Doc. 7-10 at 39]) Likewise, despite Plaintiff's complaints regarding the use of her hands, she "retained good strength in the right dominate hand" and only "some diminished grip strength in the left hand." (*Id.*, Exh. 10F, pg. 3 [Doc. 7-10 at 76])

Because the ALJ met her burden to identify specific clinical findings that were inconsistent with Plaintiff's testimony concerning the severity of her impairments, the objective medical record supports the adverse credibility determination. *See Greger*, 464 F.3d at 972; *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (an ALJ may consider "contradictions between claimant's testimony and the relevant medical evidence").

### 2. Plaintiff's level of activity

Plaintiff contends the ALJ erred in using her activities of daily living "as a basis to attack [her] credibility." (Doc. 13 at 17) On the other hand, the Commissioner argues the ALJ properly considered the fact that "Plaintiff's activities of daily living... greatly contrasted her testimony alleging very limited activities." (Doc. 14 at 8)

Significantly, the Ninth Circuit determined that a claimant's level of activity—such as claimant's ability to cook, clean, do laundry, and manage her finances— may be sufficient to support an adverse finding of credibility. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (the claimant's activities "suggest she is quite functional. She is able to care for her own personal needs, cook, clean and shop. She interacts with her nephew and boyfriend. She is able to manage her own finances..."). Likewise, an ALJ may conclude "the severity of . . . limitations were exaggerated" when a claimant exercises and participates in community activities. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009).

In this case, the ALJ determined: "Just as the objective evidence does not lend support to the alleged severity of limiting effects reported by the claimant, the claimant's activities of daily living also [indicate] greater functional capacity." (Doc. 7-3 at 22) The ALJ observed:

> The claimant reported an "active" lifestyle. (Exhibit 2A/page 4; Exhibit 4F/page 1). She reported that she is able to go to Disneyland, that she gardens, that she able to walk one

mile, stand for one hour, and sit through a movie. (Exhibit 2A/page 4; Exhibit 4F/page 1). In fact, treatment notes from Michael Cohen, DO document the claimant's report that she engages in regular exercise. (Exhibit 2F/page 2). These activities entail significant exertion, demonstrating <u>more</u> physical capacity than the claimant alleged at the administrative hearing.

(*Id.* at 22-23, emphasis in original)  In addition, the ALJ noted Plaintiff testified she had the "physical capacity to cook, do laundry, shop for groceries, and sit to help with homework."  (*Id.* at 23)  Thus, the ALJ concluded Plaintiff's level of activity "demonstrate[d] greater function than the claimant portrayed at the hearing."  (*Id.* at 23)

Because Plaintiff retained the ability to perform her activities of daily living—despite the allegations of disabling back pain and limits using her hands— the level of activity supports the determination that her impairments were not as disabling as Plaintiff alleged.  *See Stubbs-Danielson,* 539 F.3d at 1175; *Burch*, 400 F.3d at 681; *see also Molina v. Astrue,* 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even where … activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment").  Thus, the Court finds the ALJ did not err in considering her level of activity to support the adverse credibility determination.

### 3.    Treatment received

When assessing a claimant's credibility, the ALJ may consider "the type, dosage, effectiveness, and side effects of any medication." 20 C.F.R. §§ 404.1529(c), 416.929(c).  Here, the ALJ determined that Plaintiff's "history of treatment[] also does not lend support to the alleged disabling pain symptoms."  (Doc. 7-3 at 23)  Notably, Plaintiff does not challenge this finding by the ALJ.

#### a.    Treatment sought and received

The treatment a claimant received, especially when conservative, is a legitimate consideration in a credibility finding.  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("Evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (the ALJ properly considered the physician's failure to prescribe, and the claimant's failure to request, medical treatment commensurate with the "supposedly excruciating pain" alleged).

The ALJ noted was "offered epidural injections, and surgical referrals to evaluate the need for

invasive surgery, both of which, the claimant was noted to have rejected." (Doc. 7-3 at 23)  The ALJ opined that "if the claimant's pain symptoms are as severe as she alleges, it is reasonable that the claimant would more actively pursue treatment for pain management." (*Id.*)  Indeed, as the Ninth Circuit explained, "if a claimant complains about disabling pain but fails to seek treatment… for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (citation omitted).  Accordingly, this factor supports the adverse credibility determination.

### b.    Effectiveness of the treatment

Importantly, when an impairment "can be controlled effectively with medication," it cannot be considered disabling. *Warre v. Comm'r of Soc. Sec. Admin*., 439 F.3d 1001, 1006 (9th Cir. 2006).  Thus, where an ALJ finds a claimant's treatment is effective, such a finding supports an adverse credibility determination.  *See, e.g., Traynor v. Covlin*, 2014 WL 4792593, at *9 (evidence that the claimant's symptoms were managed with "prescription medications and infrequent epidural and cortisone injections" was sufficient for the ALJ to discount the plaintiff's testimony regarding the severity of impairment); *Jones v. Comm'r of Soc. Sec.,* 2014 WL 228590, at *7-10 (E.D. Cal. Jan. 21, 2014) (the ALJ properly found that the claimant's credibility was diminished due to the reported relief provided by treatment).

Plaintiff does not challenge, or even acknowledge, the ALJ's findings regarding the effectiveness of the treatment in support of the adverse credibility determination.  (*See generally* Doc. 13 at 13- 17)  The ALJ noted Plaintiff reported "medical benefit with pain medication," and the record included the following:

> In June 2015, the claimant reported benefit with hydrocodone. (Exhibit 4F/page 1)**.** Specifically, that with the medication she is able to sleep and be active. (Exhibit 4F/page 1). In fact, F. Karl Gregorius, MD noted that the claimant was "getting along quite well" with pain with only a "minimal amount of medication." (Exhibit 4F/page 1). As recently as March 2017, the claimant reported that gabapentin was helping to relieve neck and back pain; and, in May 2017, the claimant reported that she only uses pain medications "when needed." (Exhibit SF/page 4; Exhibit 12F/page 1).

(Doc. 7-3 at 23)  Given the documented relief provided by Plaintiff's medication—which she took on an "as needed" basis—the Court finds the effectiveness of the treatment received also supports the adverse credibility determination, and the ALJ did not err in considering this factor.

**C.  The ALJ's Evaluation of the Medical Record**

Plaintiff contends the ALJ erred in evaluating her residual functional capacity, by not adopting "the reporting of Dr. Frank Fine, Plaintiff's consultative examiner," who concluded Plaintiff was "unable to perform a full range of sedentary work." (Doc. 13 at 19)  According to Plaintiff, the report of Dr. Fine "should be assigned great weight in this case." (*Id.* at 25)

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  In general, the opinion of a treating physician is afforded the greatest weight but it is not binding on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

A physician's opinion is not binding upon the ALJ and may be discounted whether another physician contradicts it. *Magallanes*, 881 F.2d at 751.  An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only by identifying "clear and convincing" reasons. *Lester*, 81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*, 81 F.3d at 830.  When there is conflicting evidence, "it is the ALJ's role ... to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  The ALJ's resolution of the conflict must be upheld when there is "more than one rational interpretation of the evidence." *Id.; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ").

1.  Opinion of Dr. Fine

The ALJ gave "little weight" to the opinion of Dr. Fine, finding it was based upon "a one-time examination of the claimant," inconsistent with "his own clinical findings," and inconsistent with Plaintiff's testimony concerning her abilities. (Doc. 7-3 at 24) The ALJ's reasons for giving less weight

to Dr. Fine's opinion were not challenged by Plaintiff.[2]

The factors considered by the ALJ may be used evaluate to the weight to be given to medical opinions. The Regulations inform claimants that the frequency of examination and length of a treatment relationship will be considered. 20 C.F.R. §404.1527(c)(2)(i). In addition, the Ninth Circuit has established that inconsistencies with other evidence in the record support the decision to give less weight to a medical opinion. *See, e.g, Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986) (holding an ALJ may reject limitations not supported by the record); *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (physician's opinion properly rejected where physician's own findings do not support the opinion); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (an ALJ may reject an opinion when the physician sets forth restrictions that "appear to be inconsistent with the level of activity that [the claimant] engaged in"); *see also Khounesavatdy v. Astrue,* 549 F. Supp. 2d 1218, 1229 (E.D. Cal. 2008) ("it is appropriate for an ALJ to consider the absence of supporting findings, and the inconsistency of conclusions with the physician's own findings, in rejecting a physician's opinion"). However, to reject the opinion as inconsistent with other evidence in the record, the "ALJ must do more than offer [her] conclusions." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). The Ninth Circuit explained: "To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required." *Id.*, 849 F.2d at 421-22.

The ALJ observed that Dr. Fine found upon examining Plaintiff that she had "full 5/5 motor strength, intact sensation, and normal reflexes," which was "objective evidence of well-preserved function that demonstrates considerably greater physical capacity than opined in his medical source statement." (Doc. 7-3 at 24, emphasis omitted) In addition, the ALJ noted that Dr. Fine opined Plaintiff was "limited to lifting/carrying only 10 pounds rarely, and never more; that she can sit less than 2 hours a day; [and] she can stand/walk less than 2 hours with the need to walk around every 10 to

---

[2] Because Plaintiff did not challenge the reasons identified by the ALJ for giving less weight to the opinion, she has waived any argument regarding these findings. *See Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n.8 (9th Cir. 2009) ("arguments not raised by a party in an opening brief are waived"); *see also Pendley v. Colvin*, 2016 U.S. Dist. LEXIS 53470 at *22-23 (Dist. Or. Mar. 2, 2016) (noting that the plaintiff "challenge[d] some, but not all, of the reasons provided by the ALJ" and "any argument against those-non challenged reasons [was] deemed waived")

15 minutes..." (Doc. 7-3 at 24) The ALJ found these findings conflicted with Plaintiff's own "testimony about her ability to sit, stand, walk; and to lift and carry." (*Id.*) Indeed, Plaintiff estimated she could walk or sit for about three hours each in an eight-hour day, and that she could lift 15 pounds. (*Id.* at 65-67) Thus, the ALJ found Plaintiff's testimony indicated "greater capacity than opined by Dr. Fine." (*Id.* at 24) Because the ALJ carried her burden to identify specific inconsistencies between the record and the findings of Dr. Fine, the Court finds the inconsistencies support the ALJ's decision to give less weight to the opinion.

### 2. Opinion of Dr. Cohen

Plaintiff does not challenge the ALJ's findings regarding the opinion of Dr. Cohen but asserts the treatment notes from Dr. Cohen corroborated the findings of Dr. Fine and "provide the detailed longitudinal picture of Plaintiff's medical impairment." (Doc. 13 at 22-23) The Commissioner argues that "the ALJ gave specific reasons for rejecting Dr. Cohen's report." (Doc. 14 at 11)

In October 2015, Dr. Cohen offered only limited findings related to Plaintiff's need to elevate her legs, unscheduled breaks, and postural limitations. (*See* Doc. 7-11 at 2-5) As the ALJ observed, Dr. Cohen indicated he was "unable to assess" Plaintiff's ability to sit, stand, walk, and "lift/carry in a competitive work situation." (Doc. 7-3 at 24) The ALJ opined the opinion was "outdated as it [was] over two years old, and... the limitations assessed are not supported by evidence in the record, or, even his own clinical findings." (*Id.*) The ALJ noted: "For example, Dr. Cohen opined that the claimant can only rarely twist, bend, or crouch. (Exhibit 11F/page 4). Yet, on physical examination, he noted that the claimant had normal gait, full range of motion in the lumbar spine, negative straight leg raising, good range of motion in the hips, and full motor strength. (Exhibit 8F/page 38)." (Doc. 7-3 at 25) Thus, the ALJ identified objective findings conflicting with the limited opinion of Dr. Cohen, which is a specific and legitimate reason for rejecting the opinion. *See Cotton*, 799 F.2d at 1408 (an ALJ may reject limitations not supported by the record); *Connett*, 340 F.3d at 875 (limitations may be rejected where physician's own records do not support the opinion).

### 3. Substantial evidence supports the ALJ's determination

When an ALJ rejects the opinion of a physician, the ALJ must not only identify a specific and legitimate reason for rejecting the opinion, but the decision must also be "supported by substantial

evidence in the record." *Lester*, 81 F.3d at 830. Accordingly, because the ALJ articulated specific and legitimate reasons for rejecting the opinions of Dr. Mayo, the decision must be supported by substantial evidence in the record.

The term "substantial evidence" "describes a quality of evidence ... intended to indicate that the evidence that is inconsistent with the opinion need not prove by a preponderance that the opinion is wrong." SSR 96-2p, 1996 SSR LEXIS 9 at *8[3]. "It need only be such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion." *Id.* The Ninth Circuit determined that "[t]he opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). In addition, a claimant's "daily activities, past work attempts, and lack of medication use constitute substantial evidence" in support of an ALJ's decision. *Goodman v. Berryhill*, 741 F. App'x 530 (9th Cir. Nov. 7, 2018).

The ALJ's decision is supported by Plaintiff's level of activity; need for medication only on an "as needed" basis; and the findings of Dr. Samplay and Linder, who reviewed the record and opined Plaintiff could perform up to medium exertion work with postural limitations. (*See* Doc. 7-4 at 6-7, 14-15, 25-26) Drs. Samplay and Linder indicated their findings were based upon records from Turlock Medical Center and Dr. Gregorius, which included negative straight leg raise tests, 5/5 strength, normal reflexes, with "slight restriction of [range of motion]. (*See id.* at 4-5, 26) In addition, Dr. Linder noted Plaintiff was "very active" and reported she could garden, walk 1 mile, stand for an hour, and "sit through a movie if she changes position." (*Id.* at 5) Likewise, Dr. Gregorius opined Plaintiff was "getting along quite well with her pain syndrome on minimal amounts of medication." (Doc. 7-9 at 3) Thus, the Court finds the decision that Plaintiff is not disabled as defined by the Social Security Act is supported by substantial evidence in the record. *See Thomas*, 278 F.3d at 957; *Goodman*, 741 F. App'x

---

[3] Social Security Rulings (SSR) are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). Although they do not have the force of law, the Ninth Circuit gives the Rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989); *see also Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) ("SSRs reflect the official interpretation of the [SSA] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations").

at 530-531.

## **CONCLUSION AND ORDER**

For the reasons set for above, the Court finds Plaintiff failed to demonstrate good cause for the new evidence submitted to the Appeals Council, and thus the new evidence did not warrant further administrative proceedings. In addition, the ALJ applied the proper legal standards and the decision is supported by substantial evidence in the record. Thus, the Court must uphold the conclusion that Plaintiff was not disabled as defined by the Social Security Act through the date of the ALJ's decision. *Sanchez*, 812 F.2d at 510; *Matney*, 981 F.2d at 1019. Accordingly, the Court **ORDERS**:

1.      The Commissioner's motion for summary judgment is **GRANTED** (Doc. 14);

2.      The decision of the Commissioner of Social Security is **AFFIRMED**; and

3.      The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant, the Commissioner of Social Security, and against Plaintiff Anna Marie Baptista.

IT IS SO ORDERED.

Dated:    **September 23, 2019**              **/s/ Jennifer L. Thurston**
                                                        UNITED STATES MAGISTRATE JUDGE